RADCLIFF and others *v.* ROWLEY and others.

Radcliff, in 1812, bought and had land conveyed to him by Van Benthuysen and gave a mortgage back; but did not know of two judgments against the latter. On the 21st January 1821, the attorney of Van Benthuysen sold the land under the power in the mortgage without any notice, request or demand and on the usual advertisement; and bought in his own name. Radcliff, hearing of the sale, went to Van Benthuysen, who consented to waive the sale or to allow full value on a settlement. The attorney, by pretence, strengthened his title by a deed of the power of sale from Van Benthuysen; and, at last, insisted on ownership. Soon after the sale, the attorney obtained control of the two judgments and sold the land and again bought in his own name, without notice or knowledge of Radcliff; but the attorney, as well as Van Benthuysen, afterwards declared that no advantage thereby should be had against Radcliff. In 1834 a bill was filed by Van Benthuysen against the attorney, which resulted in a decree and order against the attorney requiring him to convey to Van B., but giving him a lien for any balance due to him. He conveyed on the 17th day of January, 1839. Radcliff had gone into possession from the first and so continued until his death in 1842; and his heirs, the complainants, had followed up such possession. But, now, the attorney proceeded under the aforesaid decree and order to sell for balance and alleged to be due from Van Benthuysen (who was also dead) and the attorney had also put a mortgage on the property: *Held*, on a bill filed by the said heirs of Radcliff to be quieted in possession—to which a demurrer was interposed by the attorney—that an equity had arisen on the original purchase and covenants whereby Radcliff was entitled to be protected against the legal title conveyed by the attorney (under the decree) to Van Benthuysen; and that this equity arose at the time of the said decree of the 17th of January 1839, and as six years had not transpired since then, that the statute of limitations did not apply.

*Vendor
and pur-
chaser.
Fraud.
Attorney
and client.
Clouds on
title.
Statute of
limita-
tions.*

DEMURRER TO BILL.

THE bill showed that, on the twenty-third day of October in the year one thousand eight hundred and twelve, William Radcliff purchased of Garrit Van Benthuysen the western half of lot No. 4, &c. in the town of Edmeston, County of Otsego, containing five hundred and twenty acres for four thousand three hundred and forty-three dollars. Deed given, with full covenants. Radcliff gave a mortgage for seventeen hundred dollars of the purchase money on the westerly half of the tract, namely, on two hundred and sixty acres.

Radcliff supposed the premises to be clear of incumbrances; but, in fact, there were two judgments against Van Benthuysen, one for three hundred and sixty dollars and fifty-five cents and the other for two hundred and ninety-nine dollars and eleven cents. They were both docketed on the first day of March one thousand eight hundred and nine. Radcliff had no notice or knowledge of this until the year one thousand eight hundred and twenty-one, when executions were issued and levies made on the eastern half of the premises containing two hundred and sixty acres, covered by the mortgage. In the year one thousand eight hundred and twenty, the defendant Reuben Rowley attended to the law business of Van Benthuysen and was his general agent; and so continued until the year one thousand eight hundred and twenty-six. On the twenty-first day of January one thousand eight hundred and twenty-one a sale of the mortgaged premises was made under Reuben Rowley's direction, by virtue of the power in the mortgage. No notice, except the usual advertisement; and Radcliff knew nothing of it until after the sale. No request or demand had been made of him for the money (which the complainants denied was due) although Radcliff resided in the adjoining town to Van Benthuysen. No competition at the sale. Rowley bought in the property for forty-four dollars, giving out that it was for the benefit of Van Benthuysen. The premises were worth the whole seventeen hundred dollars. Rowley, then, pretended that the purchase was for Van Benthuysen and when Radcliff heard of the sale, he called on Rowley, who told him he had bought in as agent for Van Benthuysen; and Radcliff called on the latter, who told him the sale should be waived or the full value should be allowed or accounted for to him on a final settlement. Consequently, Radcliff took no steps to set the sale aside. Nevertheless, Rowley intended, all the while, to keep the property as his own, concealing from both Van Benthuysen and Radcliff his fraudulent intention. Under pretence of forms of law, he obtained from Van Benthuysen a deed under the power of sale dated the twenty-seventh day of January one thousand eight hundred and twenty-one—continuing to represent that he still held

1845.

RADCLIFF
v.
ROWLEY.

the property for Van Benthuysen. But when Radcliff re-quired the latter to come to an arrangement, Rowley, then, claimed that he had made the purchase on his own account and refused to give up to Van Benthuysen any right there-in; and had retained and kept and still held possession thereof. All this referred to the two hundred and sixty acres on the westerly side of the tract. The bill charged that this property, covered by the mortgage, would become lost to Radcliff and to Van Benthuysen if Rowley were per-mitted to retain his unjust and fraudulent ownership. In the month of March in the year one thousand eight hun-dred and twenty-one and shortly after the mortgage sale, Rowley obtained control of the two judgments against Van Benthuysen, by paying the amounts to Mrs. Banyan's at-torney. The payment was made by funds of Van Ben-thuysen's in Rowley's hands as his agent. That, with a fraudulent design, both against Van Benthuysen and Rad-cliff, he, Rowley, obtained assignments of the judgments to himself; and, thereupon, issued executions and sold the easterly half of the tract. That this was done without notice to Radcliff, was irregular, without *scire facias* and by prevailing on Van Benthuysen to admit the judgments to be due and that, in this, Rowley deceived and misled Van Benthuysen as to his real design. That Van Benthuy-sen had abundance of property in Dutchess County and elsewhere, which should have been first taken. That the sale of the easterly two hundred and sixty acres of the westerly half of lot No. 4, was made by the sheriff on the fourth of April one thousand eight hundred and twenty-one and was bought in by Rowley's agent at three hundred and eighty-five dollars. That when Radcliff heard of the sale he believed it to be so grossly irregular and iniquitous that it would not be persisted in ; and he did not take prompt measures for relief. That negotiations were had with Van Benthuysen, who admitted that the sale and purchase by Rowley was by his (Van Benthuysen's) consent and for his benefit, but promised to take no advantage of Radcliff. That Rowley made similar admissions. But, about the time to redeem (say, about July one thousand eight hun-dred and twenty-two) and when it was too late for Radcliff

to avail himself of that right, Rowley, for the first time, gave out that his purchase was for himself and independent of Van Benthuysen ; and succeeded in persuading Van Benthuysen to accede thereto, &c. That, by artful management, Radcliff lost the opportunity to redeem. That he, then, made application to the supreme court to vacate the sale, on the ground of irregularities, but these were adjudged to be insufficient or relief by motion inappropriate; and the application was denied. That, in the month of October one thousand eight hundred and twenty-two, Radcliff filed a bill in chancery against Rowley and Van Benthuysen. That an answer was put in, in the name of the latter, so at variance with the bill that the remedy of Radcliff appeared involved in so much doubt, he allowed his bill to be dismissed for want of prosecution But, afterwards, Van Benthuysen acknowledged and the complainants, Radcliff's heirs, could now prove that the answer put in, in the name of Van Benthuysen, was prepared by Rowley and was falsely read to Van Benthuysen and was sworn to under a false and erroneous idea of what it contained. That, in the year one thousand eight hundred and thirty-one, a bill was filed by Van Benthuysen against Rowley; and a decree had therein on the twenty-fifth day of November one thousand eight hundred and thirty-four to the effect that Van Benthuysen was the real owner of the lands so as aforesaid sold under the executions; and that Rowley was but a trustee and he was decreed to convey them to Van Benthuysen. That, on the seventeenth day of January one thousand eight hundred and thirty-nine, Rowley executed a conveyance thereof to Van Benthuysen ; but, under an order of the chancellor of the eighth day of January one thousand eight hundred and thirty-nine it was made subject to Rowley's lien for any balance which might be found due to him in the suit. That Radcliff, at the time of his original purchase, went into possession and continued possessed of all that part now in controversy, namely, the part sold under the executions, until he went to South America in the year one thousand eight hundred and twenty-eight ; that he was absent upwards of two years ; and, after his return, he always asserted his right to

possession and, during several years before his death, did have legal and actual possession and was so possessed at the time of his death ; and the complainants had, as heirs, ever since the possession and then had the possession under the original title of Radcliff and adversely to all claim by Rowley. That, on the third day of July one thousand eight hundred and forty-two, Radcliff died, being then the indisputed owner, as far as that he was not disturbed in the possession, right or use of the premises ; and that the complainants, his said heirs, had, since that time, been undisturbed. But they had recently been informed that Rowley was attempting to revive his claims to the property under some proceedings in the cause between him and Van Benthuysen subsequent to that decree, by virtue of which he pretended the lands were liable to be sold for the payment of a balance of account decreed in his favor against Van Benthuysen. That such final decree appeared to have been made on the twenty-fourth day of November one thousand eight hundred and forty, but not enrolled until the fourteenth day of September one thousand eight hundred and forty-two. That Van Benthuysen died on the fourteenth day of March in the year one thousand eight hundred and forty-one ; but no proceedings had been taken to revive against his representatives. Still, he had advertised a sale, under the decree, of the premises for the seventeenth day of September one thousand eight hundred and forty-four. The complainants insisted that their title could not be invalidated by such proceedings, yet, the value of the property was lessened by bringing their title thus indirectly into dispute and they were entitled to be relieved from the obstruction occasioned by such proceedings of Rowley's to the full enjoyment of their property. That, by the county clerk's certificate recently furnished, there appeared of record a mortgage from Rowley to the defendants Messrs. Craft for the two thousand five hundred dollars, bearing date the fourteenth day of May one thousand eight hundred and thirty-one, open of record and an apparent lien. A charge that the mortgage was not given in good faith, nor for a *bona fide* consideration ; and was intended as a hindrance and embarrassment to the title of William Rad-

cliff.   That the Messrs. Crafts refused to cancel it; and
kept it on foot to the prejudice of the complainants' title.
*Prayer :* That the complainants' title may be settled by a
decree of this court and relieved from the unfounded claims
set up by Rowley and the Crafts.   That Rowley might be
decreed to relinquish and cancel of record all lien upon the
premises of the complainants for any balance of account
against Van Benthuysen and be barred from all further pro-
ceedings to molest and interfere with the complainants en-
joyment of the property; and that the Crafts mortgage
might be cancelled.   And for further or other relief.

The demurrer was interposed by the defendant Rowley.

Mr. *B. F. Butler*, in support of the demurrer.

Mr. *Dana*, contra.

THE VICE-CHANCELLOR :—The two principal grounds
taken by the demurrer are, 1. That there is no equity in
the bill; and, 2. That whatever be the equity stated, the
relief is barred by the statute of limitations, as more than
six years have elapsed since there has been a knowledge of
the facts.

The bill tells the story of a series of frauds practiced by
Mr. Rowley on his client and principal Van Benthuysen
and on William Radcliff, the ancestor of the complainants.
But it claims relief only in respect to that portion of the
lands which were sold under the executions on the Banyan
judgments in the month of April one thousand eight hun-
dred and twenty-one.

The other portion, sold under the mortgage in the month
of January one thousand eight hundred and twenty-one, is
not attempted to be reclaimed; and if it were, the statute
of limitations would be a bar.   So, with respect to the two
hundred and sixty acres sold under the executions : for if,
by that proceeding, the complainants or their ancestor had
been dispossessed of the land and the object of this bill
were to set aside the sale and have a restoration of the pos-
session and ownership, there would seem to be either no

1845.

RADCLIFF
*v.*
ROWLEY.

*March* 10,
1846.

1845.

RADCLIFF
v.
ROWLEY.

necessity for coming into this court or at this late day the claim to such relief would be barred by the statute.

The bill, however, shows that, notwithstanding the sheriff's sale and the failure to redeem in the year one thousand eight hundred and twenty-two, the ancestor, Radcliff, remained in the undisturbed possession down to the time of his death in the month of July one thousand eight hundred and forty-two. In the meantime, a litigation took place between Rowley and Van Benthuysen; and, as between them, the latter was adjudged to be the owner, subject to the lien or charge of the former for the balance of his account—and subject to that charge Rowley conveyed to Van Benthuysen on the seventeenth day of January one thousand eight hundred and thirty-nine. Thus, Van Benthuysen became vested with the legal title and, as between him and Radcliff, an equity arose that the latter should be protected against that legal title, by reason of Van Benthuysen's covenants and warranty in his original deed to Radcliff.

It, then, appears that since the death of Radcliff, his heirs, the complainants, have remained in the undisturbed possession of the land; and that Rowley has obtained a decree for the balance due to him from Van Benthuysen. This decree was made on the twenty-fourth day of November one thousand eight hundred and forty; and was enrolled on the fourteenth day of September one thousand eight hundred and forty-two. Van Benthuysen died on the fourteenth day of March one thousand eight hundred and forty-one and Rowley is proceeding to a sale of the land under that decree—which was advertised for the seventeenth of September one thousand eight hundred and forty-four. It is alleged that this proceeding of Rowley's and the sale he has advertised operate to the prejudice of the title of the complainants and to their possession and use and enjoyment of the property and they, therefore, claim to be protected in that possession and enjoyment as against Rowley and, also, as against his mortgagees, the Messrs. Crafts.

The bill appears to me to show a strong case for that purpose as against these parties. A case, too, of which chancery has jurisdiction on the ground of removing clouds

from the title of the complainants and obstacles in the way of their full enjoyment of the property, which is an ac-knowledged head of equity : see *The Mayor, &c. of Brooklyn* v. *Meserole*, 26 Wend. R. 137.

I am of opinion, also, that this cause of equitable relief may well be considered as having arisen when Rowley undertook or threatened to enforce the decree for his balance against the land in question or that an equity arose to Radcliff to have the land exonerated from all claim of Van Benthuysen and of Rowley as his creditor the moment Rowley conveyed it to Van Benthuysen by his deed of the seventeenth day of Jannary one thousand eight hundred and thirty-nine. This was within six years of the time of filing the bill.

The demurrer must be overruled, with costs.